## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## JOHNSTOWN DIVISION

|  |  |  |
|---|---|---|
| C.B., | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:25-cv-00263 |
| | ) | |
| vs. | ) | United States Magistrate Judge |
| | ) | Christopher B. Brown |
| LEONARD ODDO, WARDEN OF | ) | |
| MOSHANNON VALLEY | ) | |
| PROCESSING CENTER; ACTING | ) | |
| FOD BRIAN MCSHANE, ACTING | ) | |
| FIELD OFFICE DIRECTOR OF THE | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, ENFORCEMENT | ) | |
| AND REMOVAL OPERATIONS | ) | |
| PHILADELPHIA FIELD OFFICE; | ) | |
| KRISTI NOEM, SECRETARY OF THE | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY; AND PAMELA BONDI, | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| UNITED STATES; | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS, ECF NO. 1[1]

### Christopher B. Brown, United States Magistrate Judge

Presently before the Court is a counseled verified petition for a writ of habeas corpus under 28 U.S.C. § 2241 filed on behalf of C.B.[2]  This matter involves C.B., a Russian citizen who has been detained in the custody of the United States

---

[1]    All parties have consented to full jurisdiction before a United States Magistrate Judge, including entry of a final judgment, under 28 U.S.C. § 636(c). *See* ECF Nos. 9 and 14.

[2]    On September 11, 2025, the Court granted Petitioner's motion for leave to proceed by initials which was unopposed by the Respondents.  ECF No. 20.

Immigration and Customs Enforcement ("ICE") since December 9, 2024, despite being granted asylum by the Immigration Judge on May 23, 2025, and is challenging this lengthy detention. ECF No. 1.  As relief, C.B. seeks an order either requiring either his immediate release or an individualized bond hearing before an immigration judge.  *Id.* at 1, 44-45.  For the reasons that follow, the Court will conditionally grant the Petition and order the Petitioner be provided a bond hearing before a neutral immigration judge of the Executive Office of Immigration Review on or before November 5, 2025.

Additionally, C.B.'s motion for immediate release or to expedite, ECF No. 22, is denied as moot.

## I.    Factual Background

C.B., is a 36-year-old native and citizen of Russia.  ECF No. 1, ¶ 17.  He is a member of the Kalmyk community, an ethnic Mongolic group, and practices Buddhism.  *Id.*  On October 29, 2022, C.B. and his wife applied for admission at the San Ysidro Pedestrian West port-of-entry in the United States of America.  ECF No. 1-9 at 3; ECF No. 1-11 at 3.  Upon doing so, neither were in possession of valid entry documents, and both were found to be inadmissible, and were classified as "arriving aliens."  *Id.*  They were then released, otherwise known as "paroled," into the United States as humanitarian parolees[3] pending proceedings before an

---

[3]    U.S. Citizenship and Immigration Services "uses its discretion to authorize parole. Parole allows an individual, who may be inadmissible or otherwise ineligible for admission into the United States, to be paroled into the United States for a temporary period. The Immigration and Nationality Act (INA) allows the secretary of homeland security to use their discretion to parole any alien

immigration judge.  ECF No. 1-5; ECF No. 1-9 at 3; ECF No. 1-11 at 3.  When paroled, C.B. was served with a Notice to Appear on July 30, 2024 for removal proceedings before an immigration judge in Boston, MA.  ECF No. 1-5 at 1.  C.B. and his wife lived in Massachusetts for about two months and in December 2022, they moved to New York.  ECF No. 1-2, ¶ 22.  His removal proceedings were then transferred to the New York Immigration Court.  ECF No. 1, ¶ 20.

On April 24, 2023, C.B. submitted a timely application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on Form I-589 with the New York Immigration Court on April 24, 2023. *Id.*, ¶ 21.  C.B.'s wife and two youngest sons, at 3 and 8, were included as derivatives on his asylum application.[4]  *Id.*  As a result of this filing, an individual merits hearing before an immigration judge was scheduled for September 24, 2025 in New York.  *Id.*

Prior to the merits hearing, C.B. was arrested on August 3, 2024, after being in a physical altercation with two individuals in Brooklyn, N.Y.  *Id.*, ¶ 23.  He was charged with several crimes, including assault.  *Id.*, ¶ 23; ECF No. 16-1 at 3.  The other two individuals were also charged – one individual was charged with

---

applying for admission into the United States temporarily for urgent humanitarian reasons or significant public benefit. (See INA section 212(d)(5).)" *See* https://www.uscis.gov/humanitarian/humanitarian_parole (last reviewed 10/21/2025).

[4]    His younger sons live in the United States with his ex-wife. ECF No. 1-2 at ¶ 24.  His oldest son, age 14, lives in Russia.  *Id.* at ¶ 2.

punching C.B. in the face and the other individual was charged with attacking C.B. with a stick and displaying a knife.  ECF No. 1-11 at 10, 11.

After the arrest C.B. was evidently released as he reported to DHS in New York on December 9, 2024, for a "scheduled check-in / update case information." ECF No. 1, ¶ 20; ECF No. 1-11 at ¶ 9.  At that time, the August 2024 criminal charges remained pending against him.  At the appointment C.B. was arrested, taken into DHS custody without incident, and detained without bond.  ECF No. 1-6 at 1, 2, 4; ECF No. 16-1 at 3.  C.B. immediately requested an immigration judge review this custody determination.  ECF No. 6 at 1.  He was then transferred to Moshannon Valley Processing Center, an immigration detention facility located in the Western District of Pennsylvania, where he has been detained in DHS custody ever since.  ECF No. 1, ¶ 20.

Prior to his detention, C.B. maintained a fixed address in the United States, he owned and operated an appliance repair business, BCHD, Inc., ECF No. 1-11 at 15; ECF No. 1-2, ¶ 22.  His daughter was born in Brooklyn, N.Y in 2024, about one month prior to his detention.  ECF No. 1-11, at 13; ECF No. 1-3, ¶ 10.  She is a U.S. citizen.  ECF No. 1-2 at ¶ 2.

On December 18, 2024, nine days after C.B. was detained, all criminal charges against him were dismissed.  ECF No. 1-11 at 9.  Two days later, C.B.'s counsel submitted a request for custody redetermination to ICE, arguing release was appropriate as (1) C.B.'s criminal case had been dismissed, (2) he was neither a danger to the community nor a flight risk, and (3) he was experiencing dangerous

medical issues, both physical and psychological. ECF No. 1-11 at 2 - 7.  In January

of 2025, ICE denied the release request.  ECF No. 1-12.

On April 14, 2025, a bond hearing was held before an Immigration Judge.

The Immigration Judge determined that he lacked jurisdiction to redetermine

C.B.'s custody as he was charged as an "arriving alien" and under 8 U.S.C. § 1225

he was subjected to mandatory detention during his removal proceedings.[5]  ECF No.

1-9.  C.B.'s appeal of that decision was dismissed on September 26, 2025 by the

Board of Immigration Appeals ("BIA").  ECF No. 21-3.  The BIA found,

> The Immigration Judge properly found that he did not
> have the authority to redetermine the respondent's
> custody status because he is an arriving alien.  *See* 8
> C.F.R. § 1003.19(h)(2)(i)(b).  In addition, the Board
> recently issued *Matter of Yajure Hurtado*, 29 I & N Dec.
> 216 (BIA 2025)[6] which concluded that Immigration
> Judges lack the authority to hear bond requests or to
> grant bond to arriving aliens and applicants for
> admission.

*Id.*

---

[5]      During the hearing, C.B.'s attorney argued C.B. was eligible for custody redetermination
because DHS issued an arrest warrant in conjunction with the Notice to Appeal and a Notice of
Custody Determination, which specifically states C.B. was being detained under 8 U.S.C. § 1226(a)
and, as such, the Immigration Judge had discretionary authority to grant bond.  *See* ECF No. 1-9 at
3.  Both the Immigration Judge and the BIA on appeal found this argument to be unavailing, and
concluded C.B. was subject to mandatory detention pursuant to section 1225, and the immigration
judge lacked authority to hear bond requests or to grant bond to arriving aliens.  *See* ECF No. 21-3.

[6]      On September 5, 2025, the BIA issued its decision in *Matter of Yajure Hurtado*, 29 I. & N.
Dec 216, 2025 WL 2674169, which held that all noncitizens present in the United States without
admission are applicants for admission within § 1225(b)(2)(A) and must be detained for the duration
of their removal proceedings.

About six weeks after the bond hearing, on May 23, 2025, the Immigration Judge conducted a hearing on C.B.'s I-589 application for asylum, withholding of removal, and CAT protection, and granted the application for asylum. ECF No. 1-7 at 1. Despite this, C.B. was not released. Rather he remained in custody and DHS filed a notice of appeal with the BIA on June 3, 2025 which remains pending.[7] ECF No. 1-8.

On June 20, 2025, counsel for C.B. submitted a second release request to DHS, requesting release on the following grounds: (1) C.B. had been granted asylum; (2) humanitarian grounds based on his prolonged detention; and (3) he has no criminal convictions in the United States. ECF No. 1-13. On September 9, 2025, ICE denied the second request for release. ECF No. 21-2.

While awaiting the Board's decision on DHS's appeal of the Immigration Judge's grant of asylum, on August 19, 2025, counsel for C.B. filed the instant habeas petition under 28 U.S.C. § 2241. ECF No. 1. C.B. contends his prolonged detention without a bond hearing violates his rights under the Due Process Clause of the Fifth Amendment of the United States, as well as the Administrative

---

[7]     C.B.'s counsel represents that as of October 6, 2025, no briefing schedule has been issued for this appeal. ECF No. 21-1, ¶ 11.

Procedure Act ("APA") and the *Accardi* doctrine.[8]  The Government[9] filed a response, ECF No. 16, to which C.B. filed a Reply, ECF No. 21.

Also pending is a motion for immediate release or to expedite filed by C.B., ECF No. 22, to which the Government responded in opposition.  ECF No. 26.

Both matters are fully briefed and ripe for disposition.  For the reasons below, the Court finds C.B.'s prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment and will order that C.B. be provided a bond hearing before a neutral immigration judge of the Executive Office of Immigration Review on or before November 5, 2025.   The motion for immediate release or to expedite will be denied as moot.

## II.    Jurisdiction

Title 28, United States Code, Section 2241, grants federal courts the authority to hear habeas corpus petitions by noncitizens challenging the lawfulness or constitutionality of their detention by ICE.  *Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018); *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[8]    The *Accardi* doctrine is a legal doctrine derived from the landmark Supreme Court case in administrative law, *United States et rel. Accardi v. Schaughnessy*, 347 U.S. 260 (1954).  Under the *Accardi* doctrine, a government agency must follow its own regulations, rules, and procedures or run the risk of having their actions invalidated if challenged in court.

[9]    When used in this Memorandum Opinion, "Government" refers to the federal entities and officials named as respondents in the petition.

Here, the Court has jurisdiction as C.B. does not challenge any removal order as no order of removal has been entered against him. Rather, he challenges the constitutionality of his prolonged detention.

## III.    Analysis

C.B. contends that his ongoing detention without a bond hearing is unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment. ECF No. 1, at 14-16. He requests an order either requiring his immediate release or an individualized bond hearing before an immigration judge. *Id.* at 1, 44-45. The Government argues C.B.'s petition should be denied because he is being detained under 8 U.S.C. § 1225(b), which subjects him to mandatory detention.

### A.    The Statutory Framework Governing Arriving Noncitizens,[10] Including Petitioner

An "arriving alien," like C.B., who attempts to enter the United States at a designated port of entry is inspected by an immigration officer upon arrival. *See Clark v. Martinez*, 543 U.S. 371, 373 (2005) (*citing* 8 U.S.C. § 1225(a)(3)). Unless that arriving noncitizen is "clearly and beyond a doubt entitled to be admitted," he will undergo removal proceedings to determine admissibility. *See id.* (quoting 8 U.S.C. § 1225(b)(2)(A)); *see also Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425-26 (3d Cir. 2016) (noncitizens "arriving in the United States" are

---

[10]    This Memorandum Opinion uses the term "noncitizen" as equivalent to the statutory term "alien." *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020). *See* 8 U.S.C. § 1101(a)(3) ("[t]he term 'alien' means any person not a citizen or national of the United States.").

subject to expedited removal if an immigration officer determines they are inadmissible due to a lack of immigration papers) (citing 8 U.S.C. § 1225(b)(1)(A)(i) & (iii)).

If however, a noncitizen, like C.B., arrives without immigration papers indicates to the inspecting immigration officer that he fears persecution or torture if returned to his country, that officer "shall refer the alien for an interview by an asylum officer" to determine if the alien "has a credible fear of persecution [or torture]." 8 U.S.C. § 1225(b)(1)(A)(ii) and (B)(ii); 8 C.F.R. § 208.30. "[I]f the interviewing asylum officer [subsequently] . . . concludes that the alien possesses a credible fear of persecution or torture, the alien is referred for non-expedited removal proceedings under 8 U.S.C. § 1229a, 'during which time the alien may file an application for asylum and withholding of removal.'" *Castro*, 835 F.3d at 426 n.4 (quoting 8 C.F.R. § 1208.30(g)(2)(iv)(B)).

The above procedures were utilized when C.B. applied for admission to the United States on October 29, 2022. He and his wife applied for admission at the San Ysidro Pedestrian West port-of-entry. ECF No. 1-9 at 3; ECF No. 1-11 at 3. He was found to be an "arriving alien," granted humanitarian parole, and directed to appear before an immigration judge. On April 24, 2023, C.B. filed a timely application for asylum, withholding of removal, and protection under the Convention Against Torture.

**B.    There is No Statutory Basis to Order C.B.'s Release Or A Bond Hearing**

C.B.'s release status changed significantly on December 9, 2024, when he was arrested and detained by ICE agents.  At that time, his release conditions were reset to "no bond."  ECF No. 1-15 at 3.  However, somewhat contradictory, "he was provided a form indicating he was being detained pursuant to 8 U.S.C. § 1226(a) and that "ICE will make an individualized determination as to whether you will be detained or released, and if released, the conditions of release."  ECF No. 1-6 at 3. C.B.'s request for a custody redetermination was denied by the Immigration Judge who determined he lacked jurisdiction because C.B. was an "arriving alien" and ineligible for bond under 28 U.S.C. § 1225(b), not section 1226 as originally indicated.  *See also* ECF No. 21-3 at 3.  (BIA dismissing appeal finding "the Immigration Judge properly found that he did not have the authority to redetermine [C.B.'s] custody status because he is an arriving alien.  *See* 8 C.F.R. § 1003.19(h)(2)(i)(B).  In addition, the Board recently issued *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which concluded that Immigration Judges lack the authority to hear bond requests or to grant bond to arriving aliens and applicants for admission."

With the understanding that C.B. is detained under section 1225(b), it is worth noting that the United States Supreme Court has held that the language within § 1225(b) "mandate[s] detention of applicants for admission until [removal proceedings] have concluded."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). "Once these proceedings end, detention under § 1225(b) must end as well.  Until

that point [however], nothing in the statutory text imposes any limit on the length of detention." *Id*. Accordingly, *Jennings* precludes this Court from reading an implicit time limitation on the permissible length of detention under 8 U.S.C. § 1225(b); instead, § 1225(b)'s plain language authorizes C.B.'s mandatory detention "until [his removal proceedings] have concluded." *See Jennings*, 138 S.Ct. at 842-44.

Noncitizens detained pursuant to § 1225(b) likewise have no statutory right to a bond hearing, as reflected in the decisions of the immigration court in this case. *See Jennings*, 138 S.Ct. at 842 ("neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").  Indeed, the only statutory parole relief available to § 1225(b) detainees, like C.B., is set forth in 8 U.S.C. § 1182(d)(5)(A); that provision authorizes the Attorney General, through DHS, to parole such detainees into the United States if "urgent humanitarian reasons or significant public benefit" so warrant.  *See* 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 138 S.Ct. at 844 (this "express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released."). Thus, there is no statutory language within or related to § 1225(b) that authorizes this Court to order C.B.'s outright release or a bond hearing.

### C.    C.B. is Nonetheless Entitled to Habeas Relief

Presuming that the Government's argument is correct and C.B.'s detention is under § 1225(b),[11] *Jennings* does not prevent the Court from awarding habeas relief where C.B.'s detention without a bond hearing has become so unduly prolonged that it renders § 1225(b) unconstitutional as applied to him.

The Due Process Clause of the Fifth Amendment to the United States Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  It is settled law that the Due Process clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas,* 533 U.S. at 693. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects." *Id.* at 690.

In this case, C.B. argues his prolonged detention without a bond hearing constitutes a violation of due process.   The Court agrees.

In *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210 (3d Cir. 2020), the Court of Appeals for the Third Circuit recognized that "an alien lawfully present but detained under *§ 1226(c)* can still challenge his detention under the Due Process Clause [of the Fifth Amendment]." (emphasis added).  Here,

---

[11]    The Court notes, however, that the overwhelming majority of district courts in this country to have thus far considered this issue have determined that section 1226, not section 1225, applies to those similarly situated to C.B.  *See Contreras-Cervantes v. Raycraft*, 2:25-cv-13073, 2025 WL 2952796, *8 n.5 (E.D. Mich. Oct. 17, 2025) (citing cases).

however, C.B., as an arriving alien released into the country pending
administrative determination, has been detained under *§ 1225(b),* rather than
under § 1226(c).  Neither the United States Supreme Court nor the Court of
Appeals for the Third Circuit has directly addressed whether arriving aliens
detained under § 1225(b) have the same due process right to a bond hearing upon
unreasonable detention as that afforded to noncitizens being held under § 1226(c).
Even so, it appears the parties largely agree that the application of *German Santos*
to this matter is appropriate.  *See* ECF No. 1 at 17 – 23; ECF No. 16 at 6 – 11.  *But
see* ECF No. 1 at 23 – 25 (arguing for the application of the three-part balancing test
set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976), and ECF No. 21 at 8 n. 1
(C.B. "maintains that his prolonged detention is unconstitutional under both the
*German Santos* test and the test articulated in *Mathews* . . . .  However, should the
Court agree that [C.B.'s] detention is unreasonably prolonged under *German
Santos*, it need not reach the *Mathews* factors.").

Moreover, the application of *German Santos* to a § 1225(b) detention by
United States District Judge Stephanie L. Haines in *A.L. v. Oddo*, 761 F. Supp. 3d
822 (W.D. Pa. 2025), is persuasive.  *See also Nunez v. Oddo*, No. 25-cv-143J, 2025
WL 2443437, at *1 (W.D. Pa. Aug. 25, 2025) (stating, "courts within this Circuit
have applied the same due process standard to immigration detention on both
bases" (8 U.S.C. § 1225(b) and 8 U.S.C. § 1226(c)); *Pierre v. Doll*, 350 F. Supp. 3d
327, 332 (M.D. Pa. 2018) (agreeing with the "weight of authority" finding that
arriving aliens detained pre-removal under § 1225(b) have a due process right to an

individualized bond consideration once it is determined that the duration of their detention has become unreasonable).

The determination of whether C.B.'s prolonged detention is unreasonable is a "highly fact-specific inquiry." *German Santos*, 965 F.3d at 210 (internal citations and quotation marks omitted). To aid in this inquiry, the Court of Appeals for the Third Circuit has identified four factors for consideration: (1) the duration of the petitioner's detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of the petitioner's confinement. *Id.* at 212. These factors will be considered in order.

### i.    Duration:

To begin, the first and most important factor – the length of detention – weighs in C.B.'s favor. He has been detained continuously since December 9, 2024 – more than 10 months as of this writing. This delay falls within the range where courts have held that delays start to become unreasonable. *See German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F. 3d 469, 478 (3d Cir. 2015) (six-month to one-year period triggered a bond hearing)); *see also Diop v. ICE/Homeland Sec.,* 656 F.3d 221, 234 (3d Cir. 2011) (mandatory detention becomes "more and more suspect" after five months), *overruled on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).[12] And C.B.'s detention will continue

---

[12]    In *Jennings*, the Supreme Court rejected the conclusion that § 1226(c) contained an implicit reasonableness limitation. However, the *Jennings* decision did not call into question the constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long.

while the Government's appeal from the grant of his request for asylum is pending, which has been pending for several months and in all likelihood will continue to be for the foreseeable future. Accordingly, this factor weighs in favor of granting habeas relief.

### ii.    Likelihood of Continued Detention:

The second factor – the likelihood of continued detention – also weighs in favor of C.B. Here, the habeas court must consider "whether the detention is likely to continue." *German Santos*, 965 F.3d at 211. When a noncitizen's removal proceedings "are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Id.* Here, the Immigration Judge granted relief in the form of asylum on May 23, 2025 and DHS has appealed that order to the BIA. The Government acknowledges C.B.'s "detention is likely to continue for at least some time while his appeal is pending," but it argues "his detention is not likely to continue longer than the detention would have been for the petitioner in *German Santos* [.]" ECF No. 16 at 9-10. Be that as it may, C.B. has been detained for more than ten months and ICE has rebuffed his two requests for release, despite C.B. having no criminal convictions and the Immigration Judge's grant of asylum. *See* ECF No. 1-12; ECF No. 21-2.

Given these facts, it is likely that C.B. will remain detained for the foreseeable future. This factor also weighs heavily in favor of granting habeas relief.

### iii.    Reason for Delay:

The third factor – the reasons for the delay – is neutral.  Here, the habeas court must consider "the reasons for the delay, such as a detainee's request for continuances" and must "ask whether either party made careless or bad-faith 'errors in the proceedings that cause[d] unnecessary delay." *German Santos*, 965 F.3d at 211 (quoting *Diop*, 656 F.3d at 234).

Courts are not to "hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings" because delays while he exercises the rights afforded to him by statute cannot be held against him. *German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez*, 783 F.3d at 476-77).  Similarly, any legal errors by the Government should not be held against the Government unless there is evidence of carelessness or bad faith.  *Id.*

Here, the record does not support the conclusion that either party is responsible for the sort of unreasonable or bad faith delays contemplated by the Court of Appeals in *German Santos*.  As a result, this factor is neutral.

### iv.   Conditions of Confinement:

The fourth and final factor – whether the conditions of C.B.'s confinement are "meaningfully different" from criminal punishment – favors C.B.  As explained above, C.B. has been detained at MVPC for over 10 months.  He has submitted a declaration, subject to penalty of perjury, in which he asserts the conditions at MVPC are very much like prison.  ECF No. 1-2.  These conditions include:

- lack of interpretation services, *id.* at ¶ 37;

- lack of sleep due to constant noise and people fighting all the time, *id.* at ¶¶ 39, 41;

- expired and inedible food choices, *id.* at ¶ 40;

- being housed in a crowded unit with more than 60 people in his unit, alongside gang members and other individuals who seem dangerous, *id.* at ¶ 41; and

- delayed access to medical treatment and mental health care, *id.* at ¶¶ 44, 47.

C.B. also provided a letter from Marion Koshy, LMSW, who attests to the lack of adequate mental and physical healthcare at MVPC and how the "instability and chaos at MVPC" contributes to the "deterioration" of C.B. health. ECF No. 1-4 at 3.

And he cites several cases in which courts found the detainees at MVPC experienced carceral conditions. *See* ECF No. 1, ¶ 48; ECF No. 21 at 11. C.B. also relies on the recent report published by Temple University School of Law which details the level of mistreatment to which MVPC subjects its detainees. *Id.*, ¶ 50.

The Government responds that MVPC "only houses immigration detainees." ECF No. 16 at 10. C.B. "is being held at an immigration-specific processing center, in accordance with the INA, while his immigration case proceeds and any removal is finalized. He is not in prison along with inmates serving a criminal punishment[.]" *Id.* at 11. The Government relies solely on argument that C.B.'s conditions of confinement are not akin to criminal punishment because MVPC houses immigration detainees. It did not provide any affidavits, declarations, or other evidence to support its argument.

The Court finds C.B., who is detained and not free to leave MVPC, has provided sufficient, persuasive evidence in his declaration that his conditions of confinement are akin to carceral conditions. The Court also finds the Government's argument in response to be insufficient. Accordingly, this factor weighs in favor of granting habeas relief.

In sum, three factors – the duration of detention, the likelihood of continued detention, and the detainee's conditions of confinement – weigh in favor of granting habeas relief, and one factor – the reasons for the delay – is neutral.[13]

C.B. has shown that the factors set forth in *German Santos* balance in favor of the conclusion that his detention under 8 U.S.C. § 1225(b) without an individualized bond hearing has become unreasonable and that his continued detention with no process at all, violates his rights under the Due Process Clause of the Fifth Amendment.

## IV.    Conclusion

C.B. has been detained for over 10 months, "an unreasonably long time, and there is no end in sight." *German Santos*, 965 F.3d at 213. The Court finds C.B.'s prolonged detention under § 1225(b) without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment. The Petition will be conditionally granted.

---

[13]    Because the Court grants C.B.'s petition on due process grounds, the Court need not reach C.B.'s additional argument that his detention also violates the Administrative Procedure Act and the *Accardi* doctrine.

C.B.'s motion for immediate release or to expedite, ECF No. 22, will be denied as moot.

A certificate of appealability is not required for federal detainees seeking relief under Section 2241. *Muza v. Werlinger*, 415 F. App'x 355, 357 n.1 (3d Cir. 2011). *See also* 28 U.S.C. § 2253(c)(1). Therefore, it is not necessary to determine whether one should be issued here.

An appropriate Order follows.

DATED this 22nd day of October, 2025.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc:    All Counsel of Record
       (via ECF electronic notification)

19